38 F.3d 289
 147 L.R.R.M. (BNA) 2385, 63 USLW 2276,
129 Lab.Cas. P 11,201,
30 Fed.R.Serv.3d 164
 Sedolia CLEVELAND, Administratrix of the Estate of Melvin
Cleveland, deceased, Plaintiff-Appellant,
v.
PORCA COMPANY, formerly doing business as Emge Packing
Company Incorporated, Emge Packing Company Pension Fund for
Hourly Rated Employees, United Food and Commercial Workers
International Union (AFL-CIO), et al., Defendants-Appellees.
 No. 93-3125.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 12, 1994.
Decided Sept. 29, 1994.
Rehearing Denied Oct. 27, 1994.
 
 Joseph A. Yocum (argued), Yocum & Yocum, Evansville, IN, for plaintiff-appellant.
 Thomas O. Magan (argued), Brian P. Williams, Kahn, Dees, Donovan & Kahn, Evansville, IN, Irving M. King (argued), Kelly J. Hupfeld, Cotton, Watt, Jones & King, Chicago, IL, and Rodney H. Grove, Grove Law Office, Evansville, IN, for defendants-appellees.
 Before BAUER, COFFEY, and MANION, Circuit Judges.
 MANION, Circuit Judge.
 
 
 1
 Four employees of Porca Company sued to enforce an arbitration order which held that Porca Company had breached its collective bargaining agreement. They also sued Porca Company for breach of its collective bargaining agreement and the Emge Packing Co. Pension Plan for Hourly Rated Employees ("Pension Plan") for violating the Pension Plan agreement. Finally, the employees sued their local and international unions for breach of the duty of fair representation. The district court granted summary judgment in favor of each defendant. The plaintiffs appeal. We affirm.
 
 I. Background
 
 2
 The plaintiffs, Melvin C. Cleveland,[1] Joseph Effinger, Roe E. Freudenberg and Cecil K. Mallory were employees of Porca Company (formerly Emge Packing Co., Inc.) ("Porca"). The employees worked at its meat packing plant in Indiana (Indiana plant). United Food and Commercial Workers Local Union No. 172 ("Local 172") represented the plaintiffs in their employment relationship with Porca and had entered into a collective bargaining agreement with Porca on their behalf.
 
 
 3
 In the fall of 1990, Porca and Excel Corporation ("Excel") began negotiations aimed at selling the Indiana plant to Excel. During the negotiations, Local 172 requested that if Porca and Excel entered into such an agreement, Excel be required to assume the collective bargaining agreement. Porca, however, refused to include this provision in its contract for the sale of the Indiana plant even though the collective bargaining agreement between Porca and Local 172 provided that: "The Agreement shall be binding on the parties hereto and their successors." After negotiations on the sale became final, Porca, on December 17, 1990, closed down its plant and fired all of its employees. On December 19, 1990, Excel began operations at the plant but at a much scaled-back level. Excel hired approximately 150 of the approximately 368 former Porca employees, but refused to recognize the collective bargaining agreement that was in effect between Porca and Local 172.
 
 
 4
 Local 172 filed a grievance with Porca, claiming that Porca had violated the collective bargaining agreement by failing to require that Excel assume the agreement. This dispute was submitted to arbitration pursuant to the collective bargaining agreement, and the arbitrator found that Porca had violated the successorship provision of the collective bargaining agreement. He also found that "[t]he union is entitled to a 'make-whole' remedy," stating that "Excel has paid Porca's former employees less than was due and owing under the labor contract [so Porca] should be responsible for that difference." The arbitrator's decision, however, failed to set forth any measure of damages for the union members not hired by Excel. The failure to account for these workers is explained by the fact that the arbitrator mistakenly assumed that Excel had hired almost the entire former work force of Porca, while in fact less than fifty percent of the employees terminated by Porca were hired by Excel. It is therefore unclear whether the arbitrator intended those not hired by Excel to receive a make-whole remedy.
 
 
 5
 After the arbitrator's award was handed down, Local 172 and Porca met on several occasions to discuss the arbitrator's award and its ambiguity. Porca argued that those employees who had been hired by Excel would be entitled to an award for back and front pay but that those not rehired were entitled to nothing. Local 172, on the other hand, took the position that every former employee, whether hired by Excel or not, was entitled to back and front pay for Porca's violation of the collective bargaining agreement. Local 172 and Porca eventually compromised and entered into a Comprehensive Agreement and Release and later an Addendum to the Comprehensive Settlement Agreement ("Settlement Agreement"). The amount of the award for each employee was based on their employment status with Excel and on the number of years each had worked for Porca. All of Porca's former employees were given the opportunity to receive the amount due them under the Settlement Agreement in exchange for signing a general release. And all of Porca's employees, except the four plaintiffs, signed the release.
 
 
 6
 The four employees instead filed a complaint against Porca seeking to by-pass the Settlement Agreement and enforce the arbitration award, with all former employees receiving back and front pay. The plaintiffs also sued Porca and the Pension Plan pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), claiming that Porca had violated the collective bargaining agreement and that the pension plan violated the Pension Plan Agreement by distributing excess pension funds to Porca. And finally, plaintiffs sued Local 172 and their International Union, claiming that the unions had breached their duty of fair representation by entering into the Settlement Agreement. The district court granted summary judgment in favor of the defendants. Plaintiffs appeal.
 
 II. Analysis
 A. Notice of Appeal
 
 7
 Initially, we must determine whether we have jurisdiction over this appeal. The defendants claim that we do not because the Notice of Appeal failed to list, either in the caption or the body of the Notice of Appeal, the names of all of the persons taking the appeal. At the time of filing, Rule 3(c) of the Federal Rules of Appellate Procedure provided: "The notice of appeal shall specify the party or parties taking the appeal...." In Torres v. Oakland Scavenger Co., 487 U.S. 312, 318, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988), the Supreme Court held that Rule 3(c)'s requirement that a notice of appeal "specify the party or parties taking the appeal" is a jurisdictional requirement and therefore the failure to name each individual appellant deprived the court of jurisdiction over the appeal. In response to the Torres decision, the Federal Rule of Appellate Procedure were amended. See Advisory Committee Notes, Fed.R.App.P. 3(c) ("The amendment is intended to reduce the amount of satellite litigation spawned by the Supreme Court's decision in Torres v. Oakland Scavenger Co., 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988)"). Effective December 1, 1993, Amended Rule 3(c) provides that "[a]n appeal will not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice." Fed.R.App.P. 3(c).
 
 
 8
 Although the notice of appeal in this case was filed on September 2, 1993, prior to the effective date of Amended Rule 3(c), the Supreme Court, in adopting the amended rule, stated that the rule shall govern pending cases "insofar as just and practicable." 113 S.Ct. Preface 819 (April 22, 1993). In this case, it is "just and practicable" to apply Amended Rule 3(c). The defendants will suffer no prejudice or injustice by this appeal going forward. Dodger's Bar & Grill, Inc. v. Johnson County Bd. of County Comm., 32 F.3d 1436, 1440 (10th Cir.1994) (it is just and practicable to apply Amended Rule 3(c) because the defendants will suffer no prejudice or injustice); see also Garcia v. Wash., 20 F.3d 608, 609 (5th Cir.1994) (it was just and practicable to apply Amended Rule 3(c) to appeal filed prior to December 1, 1993).
 
 
 9
 The question still remains, however, whether the notice of appeal in this case satisfied the requirements of Amended Rule 3(c). Here, the notice of appeal stated: "Notice is hereby given that the plaintiffs in the above-entitled case, hereby appeal to the United States Court of Appeals for the Seventh Circuit from the final judgment entered in this action on the 6th day of August, 1993." The caption to which this statement referred reads as follows: "Melvin Cleveland, et al, Plaintiffs, v. Porca Company, etc., et al, Defendants."
 
 
 10
 Amended Rule 3(c) specifically provides for this form of notice stating: "An attorney representing more than one party may fulfill this requirement by describing those parties with such terms as 'all plaintiffs,' ... 'the plaintiffs A, B, et al.' " The above notice was therefore clearly sufficient to satisfy Amended Rule 3(c). See Dodger's Bar & Grill, 32 F.3d at 1440 (notice stating that the appeal is by Dodger's "and the other individually-named plaintiffs" is sufficient to meet the requirements of Amended Rule 3(c)).
 
 
 11
 We now turn to the merits of this case. The plaintiffs sued their local and international unions for breach of the duty of fair representation. The plaintiffs also asserted violations of Section 301 of LMRA against Porca and the Pension Plan. The district court granted all defendants summary judgment. We review a decision granting summary judgment de novo, Porter v. Whitehall Lab., Inc., 9 F.3d 607, 612 (7th Cir.1993). Summary judgment is appropriate when "there is no genuine issue as to any material fact ... and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Applying this standard, we consider each of the plaintiffs' claims.
 
 B. Fair Representation Claim
 
 12
 The plaintiffs alleged that Local 172 and the International Union violated their duties of fair representation in negotiating and entering into a Settlement Agreement with Porca concerning the arbitration. The plaintiffs' position, while far from clear, appears to be that Local 172 violated its duty of fair representation in negotiating the Settlement Agreement by: (1) telling the plaintiffs that the arbitration award guaranteed them an award which would make them whole; (2) failing to inform the plaintiffs that it was engaged in settlement negotiations with Porca and failing to keep them apprised of the negotiations; (3) promising the plaintiffs that they could vote on any settlement with Porca; (4) promising the employees that they could submit proof of their earning losses; and (5) allowing a six-person committee to negotiate the settlement when five of the six committee members were hired by Excel.
 
 
 13
 A union has "broad authority in the role as the exclusive bargaining agent for a class of employees and therefore owes a concomitant duty of fair representation to each of its members." Thomas v. United Parcel Serv. Inc., 890 F.2d 909, 916 (7th Cir.1989) (internal citations omitted). "A union violates its duty of fair representation to the employees it represents only if its actions are 'arbitrary, discriminatory, or in bad faith....' " Griffin v. Air Line Pilots Ass'n, Inter., 32 F.3d 1079, 1083 (7th Cir. August 10, 1994). "[A] union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, 'as to be irrational.' " Air Line Pilots Ass'n, Inter. v. O'Neill, 499 U.S. 65, 67, 111 S.Ct. 1127, 1130, 113 L.Ed.2d 51 (1991) (internal citations omitted).
 
 
 14
 In this case, Local 172 presented evidence in support of its motion for summary judgment which demonstrated that it did not use "arbitrary, discriminatory, or bad faith" methods in negotiating the Settlement Agreement with Porca. Specifically, Local 172 presented evidence that it had told the plaintiffs that the award might not provide every employee a remedy. In fact, Local 172 presented evidence that it had informed the plaintiffs that there were some problems with the arbitration award and that it was attempting to work out these problems with Porca. Local 172 further pointed to evidence that established that the six-person committee which negotiated the settlement was the grievance committee used by Local 172 to resolve a variety of complaints, and that this committee had previously been elected by the employees, including the plaintiffs.
 
 
 15
 The only evidence that the plaintiffs presented supporting their allegations of arbitrary, discriminatory or bad faith actions constituted a composite affidavit[2] which consisted of mixed statements of opinion and beliefs.[3] However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegation or denial of his pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Statements of "beliefs" or "opinions" are insufficient to create a genuine issue of material fact. Powers v. Dole, 782 F.2d 689, 695 (7th Cir.1986).
 
 
 16
 The only statement in the composite affidavits which could possibly be construed as an assertion of fact concerning the negotiation of the Settlement Agreement was the plaintiffs' statement that the union promised them that they could vote on any issue concerning the Porca plant closing. This, however, is insufficient to support a fair representation claim. The plaintiffs themselves admitted that they had never before voted on the resolution of grievances, and the by-laws do not contemplate any such individual voting. Exaggerated promises in contravention of normal union procedures are not the type of action that supports a fair representation claim. Antrim v. Burlington N., Inc., 847 F.2d 375, 378 (7th Cir.1988).[4] Therefore, under these circumstances no fair representation claim exists.
 
 
 17
 Local 172 also did not act in an arbitrary, discriminatory or bad faith manner in entering into the Settlement Agreement with Porca after the arbitrator found that Porca had violated the collective bargaining agreement. A union may settle a dispute after it has gone to arbitration. Id. at 378-79; Nida v. Plant Protection Ass'n Nat., 7 F.3d 522, 526 (6th Cir.1993). Here, Local 172 entered into the Settlement Agreement with Porca because the arbitration award entered in its favor was ambiguous. The arbitration award stated that Porca's employees were entitled to a make-whole remedy and that this remedy should be the difference between the amount Excel was paying and the amount Porca had agreed to pay them in the collective bargaining agreement. The arbitration award, however, mistakenly assumed that most of Porca's former employees were hired by Excel. That was not the case; only about half of Porca's former employees went to work for Excel. There were no more jobs available. During negotiations, Porca maintained that the arbitration award only entitled those employees hired by Excel to a remedy. On the other hand, Local 172 asserted that all former Porca employees were entitled to a "make-whole" remedy. Because of the ambiguity in the award, Local 172 realized that there was a real risk that the arbitrator would agree with Porca and only require Porca to pay damages to those hired by Excel. Since the new operation was substantially downsized there was certainly a risk that the arbitrator could conclude that those who lost jobs because of the reduced work force would not deserve any compensation. Instead of risking this outcome, therefore, Local 172 entered into an agreement which provided all of Porca's former employees with a remedy. By ensuring that all of its members were included in the award, its decision to enter such a settlement did not constitute arbitrary, discriminatory or bad faith behavior. See Nida, 7 F.3d at 526 (union did not violate duty of fair representation by settling with employer after arbitrator decided in union's favor because amount of damages was in dispute).
 
 
 18
 Plaintiffs also claim that the district court erred in granting summary judgment in favor of the International Union. The plaintiffs asserted in their composite affidavit that an attorney from the International Union was present at a meeting held by Local 172 to inform the union members of the arbitration victory. The plaintiffs failed to present any other evidence tying International Union to any events concerning the negotiations of the Settlement Agreement. The presence alone of a representative of the International Union at this meeting is insufficient to state a fair representation claim. The plaintiffs also assert that they can maintain a fair representation claim against the International Union because it was a party to the Settlement Agreement. But as discussed above, entering into the Settlement Agreement did not violate the union's duty of fair representation. Therefore the district court properly granted summary judgment in favor of the International Union.
 
 
 19
 C. Section 301 Claims Against Porca and Pension Plan
 
 
 20
 In their complaint, the plaintiffs brought a section 301 claim against Porca and the Pension Plan. In their claim against Porca, the plaintiffs sought to either enforce the arbitration award[5] or to maintain a cause of action against Porca for breach of the collective bargaining agreement. The plaintiffs also asserted that the Pension Plan violated section 301 by distributing surplus funds to Porca in violation of the Pension Plan Agreement.
 
 
 21
 The plaintiffs initially sought to enforce the arbitration award pursuant to section 301. The plaintiffs lack standing to enforce the arbitration award, however, because when employees are represented by a union they are not parties to either the collective bargaining agreement or any unioncompany arbitration. Martin, 911 F.2d at 1244. They therefore generally cannot challenge, modify, or confirm the award in court. Id. An exception to this general rule exists which "allows employees to challenge or confirm a union-company arbitration award but only if the employees state a claim for a Section 301 fair representation case and the challenge or confirmation is integral to the case." Id. As discussed above, the district court properly granted the unions summary judgment on the plaintiffs' fair representation claims. Because there is no fair representation claim, the plaintiffs lack standing to seek confirmation of the arbitration award. Id.
 
 
 22
 The plaintiffs also cannot maintain a claim against Porca under Section 301 for breach of the collective bargaining agreement. To state such a claim, the plaintiffs must demonstrate that the employer breached the collective bargaining agreement and that the union violated its duty of fair representation. Martin, 911 F.2d at 1245. But again, as discussed above, the unions did not violate their duty of fair representation. Therefore, the plaintiffs cannot state a Section 301 claim against Porca for any asserted breach of the collective bargaining agreement. Cf. Gutierrez v. United Foods, Inc., 11 F.3d 556 (5th Cir.1994) (holding that individual employees did not have standing to enforce successors-and-assigns clause in a collective bargaining agreement). For the same reason, the plaintiffs cannot state a claim against the Pension Plan pursuant to Section 301 for its alleged violation of the Pension Plan Agreement.[6]
 
 D. Miscellaneous Motions
 
 23
 The plaintiffs also appeal various rulings the district court made prior to granting summary judgment. None of these rulings were in error, however, and so we will spend little time with them.
 
 
 24
 First, the plaintiffs challenge the district court's decision to strike their response to the defendants' reply brief. The defendants filed a motion for summary judgment, to which the plaintiffs responded. The defendants then filed a reply brief. The plaintiffs then filed a "response to the defendants' reply brief." The district court struck this filing. The plaintiffs maintain that the district court erred in doing so.
 
 
 25
 The Local Rules provide for three briefs: an initial brief, a response to that brief, and a reply brief. S.D.Ind.L.R. 7.1. They do not provide for the filing of a response to a reply brief. S.D.Ind.L.R. 7.1. And it is within the district court's discretion to strike an unauthorized filing. Cf. Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1020 (7th Cir.1992). The plaintiffs claim that the district court abused its discretion because the "response to the reply brief" was a filing necessary to respond to new issues the defendants raised in their reply briefs. If that was the case, however, the proper response was a motion to strike the offending portions of the reply brief or to seek leave to file a response to the reply brief. Gold v. Wolpert, 876 F.2d 1327, 1331 n. 6 (7th Cir.1989). The plaintiffs followed neither course. Under these circumstances, it was not an abuse of discretion to strike the unauthorized filings.
 
 
 26
 The plaintiffs also appeal the district court's denial of their motion to amend their amended complaint. This court reviews the denial of a motion for leave to amend a complaint for abuse of discretion. Hi-Lite Prod. Co. v. American Home Prod. Corp., 11 F.3d 1402, 1411 (7th Cir.1993). "The District Court will be reversed only if no reasonable person could agree with its decision." Lac du Flambeau Ind. v. Stop Treaty Abuse--Wis., Inc., 991 F.2d 1249, 1257 (7th Cir.1993).
 
 
 27
 In this case, the plaintiffs filed their motion to amend after discovery was completed and after the motions for summary judgment were fully briefed. The plaintiffs sought to add an entirely new claim against the Pension Plan based on ERISA. This motion came late in the day. The defendants had already filed witness and exhibit lists with the court and the deadline for such motions, set by the court in the Case Management Plan, had already passed. Again, under these circumstances the district court did not abuse its discretion in denying the motion to amend the amended complaint. See, e.g., Murphy v. White Hen Pantry Co., 691 F.2d 350, 353 (7th Cir.1982) (district court did not abuse its discretion in refusing to allow plaintiffs to amend their complaint where motion was filed after parties had completed discovery and where motion would inject an entirely new theory into the litigation); Kleinhans v. Lisle Sav. Profit Sharing Trust, 810 F.2d 618, 625 (7th Cir.1987) (district court did not abuse its discretion in denying leave to amend complaint where proposed amendment came after the close of discovery and after defendants moved for summary judgment--the motion represents an apparent attempt to avoid the effect of summary judgment).
 
 
 28
 Finally, the plaintiffs appeal the district court's denial of their request for renewed discovery. A district court's decision to deny an additional extension of discovery is also reviewed for an abuse of discretion. F.D.I.C. v. American Cas. Co. of Reading, PA, 998 F.2d 404, 407 (7th Cir.1993). This motion also came after the motions for summary judgment were fully briefed, the witness and exhibit lists were submitted to the court, and after the Case Management Plan deadline. As before, the district court did not abuse its discretion in denying the motion for renewed discovery.
 
 III. Conclusion
 
 29
 The district court properly granted summary judgment in favor of Local 172 and the International Union because they presented evidence which demonstrated, as a matter of law, that they did not violate their duty of fair representation. Plaintiffs failed to present evidence of a material issue of fact in response and therefore there was no fair representation claim. The plaintiffs accordingly could not seek to confirm the arbitration award against Porca. They also could not maintain Section 301 claims against Porca and the Pension Plan. Finally, the district court did not abuse its discretion in striking the plaintiffs' response to the defendants' reply brief, in denying the plaintiffs' motion to amend their amended complaint, or in refusing to extend discovery. For these and the foregoing reasons, we
 
 
 30
 AFFIRM.
 
 
 
 [1]
 Melvin C. Cleveland died during the pendency of this litigation and Sedonia Cleveland, Administratrix of Melvin's Estate was substituted as a plaintiff
 
 
 [2]
 The composite affidavit was one affidavit attested to by the three surviving plaintiffs. It is unclear whether this affidavit satisfies the requirements of Rule 56(e). See, e.g., Toro Co. v. Krause, Kern & Co., Inc., 827 F.2d 155, 162 n. 3 (7th Cir.1987). We need not decide this issue, however, because the composite affidavit failed to present a genuine issue of material fact
 
 
 [3]
 On appeal, the plaintiffs attempt to support their opposition to summary judgment by pointing to portions of depositions taken in this case. The plaintiffs did not present these depositions to the district court, however, and "the time of appeal is too late to specify portions of the record which may create an issue of material fact." Doe v. Cunningham, 30 F.3d 879, 885 (7th Cir.1994)
 
 
 [4]
 Moreover, 368 persons accepted the Settlement Agreement and only four, the four plaintiffs, did not. The plaintiffs, accordingly, cannot demonstrate that the failure to hold a vote prejudiced their case in any way. See, e.g., Acri v. International Ass'n of Machinists & Aerospace Workers, 781 F.2d 1393, 1397 (9th Cir.1986) (there must be a causal relationship between the union's unfair representation and the injury)
 
 
 [5]
 In their complaint, the plaintiffs sought to enforce the arbitration award under both the Federal Arbitration Act ("FAA") and the LMRA. However, "[i]n seeking to confirm an arbitration award created by virtue of a collective bargaining agreement, recourse is to the LMRA, not the FAA." Martin v. Youngstown Sheet & Tube Co., 911 F.2d 1239, 1244 (7th Cir.1990)
 
 
 [6]
 Moreover, the Pension Plan specifically provided that surplus funds should be distributed to Porca. Therefore, no breach of the Pension Plan agreement occurred