1102

HART–CARTER COMPANY, Plaintiff,

v.

HCC, INC., Defendant.

No. 94 C 2846.

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 23, 1995.

William Dunnegan, New York City, Karl L. Felbinger, Felbinger & Felbinger, North-brook, IL, for plaintiff.

James R. Troupis, Thomas P. Heneghan and Eric M. McLeod, Michael, Best & Friedrich, Madison, WI, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Hart–Carter Company brings this action, alleging breach of contract by defendant HCC, Inc. Presently before the court is defendant's motion for summary judgment and plaintiff's motion for leave to amend its complaint. For the reasons set forth below, defendant's motion for summary judgment is granted and plaintiff's motion to amend is denied.

### I. Background

In 1987, plaintiff Hart–Carter Company and defendant HCC entered into an Asset Purchase Agreement. In the agreement, Hart–Carter transferred agricultural equipment manufacturing facilities located in Illinois to HCC. During the course of the negotiations leading up to the agreement, Hart–Carter learned that it faced potential indemnification liability in a lawsuit brought by John Deere, Inc. against Massey–Ferguson Corporation, a purchaser of Hart–Carter products.[1] Accordingly, the parties included a clause in their Purchase Agreement which read as follows:

> 6.6 *Massey–Ferguson Litigation.* Buyer agrees to pay one half of all expenses (including attorneys' fees) incurred by Seller in connection with any litigation of any claims made by Massey–Ferguson, Varity or Massey Combines Corporation

1. Hart–Carter manufactured floating cutter bars, which were incorporated into Massey–Ferguson's MF 9100 Series header. John Deere & Co. asserted that the MF 9100 Series header infringed on a patent it owned.

as described in Exhibit 8 for so long as the Buyer shall continue to produce and sell the products and/or components that are the subject of such claims, and all royalties or other amounts that may ultimately be required to be paid to Massey–Ferguson, Varity or Massey Combines Corporation as a result of such litigation or the settlement thereof with respect to all such sales made by Buyer of such products or components after the closing.

Exhibit 8, in turn, provided:

### List of Pending and Threatened Litigation

1. Massey–Ferguson (Varity) has communicated to Hart–Carter Company by letter dated December 23, 1986 from Robert L. Farris to James M. Frederick, that it has been charged by John Deere Company with infringement of Deere Patent No. 3,982,383, Harvesting Platform with Floating Cutter Bar, and that it is looking to Hart–Carter for indemnification under paragraph 5 of Massey–Fergusons' standard purchase order because Hart–Carter supplies flexible cutter bar assemblies, spring assemblies, long dividers and some other components on the drive side of the Massey Ferguson MF 9100 Series floating cutter bar headers. Hart–Carter Company does not believe that the component parts that it supplies to Massey–Ferguson infringe the Deere Patent and, as a result, does not believe that Massey–Ferguson is entitled to any indemnification under the terms of the Massey–Ferguson purchase order.

Hart–Carter and HCC, Inc. executed the agreement on March 27, 1987.

In 1988, Massey–Ferguson joined Hart–Carter as a third-party defendant in the John Deere litigation, seeking indemnity for contributory infringement. In 1991, Massey–Ferguson settled with John Deere, and, in January 1992, settled its indemnification dispute with Hart–Carter for $160,000. Throughout the course of the litigation, Hart–Carter asked HCC to contribute pursuant to Section 6.6 of the agreement, but HCC refused. Hart–Carter then brought this suit, asserting that HCC breached Section 6.6 of the Purchase Agreement. HCC has moved for summary judgment, arguing that Hart–Carter can not demonstrate that HCC has "continue[d] to produce and sell the products and/or components that [were] the subject of" the claims identified in the agreement.

On December 19, 1994, approximately three and one-half months after the close of discovery, some seven weeks after the pretrial order and motion for summary judgment were filed, and three weeks after the motion for summary judgment was fully briefed, Hart–Carter filed a motion for leave to file an amended complaint to include a claim for fraud. Hart–Carter bases this proposed claim on the declaration of Carl E. McNair, which was an exhibit to HCC's summary judgment motion filed on November 1, 1994. Hart–Carter asserts that the declaration demonstrates that HCC had no intention of producing the MF 9100 Series floating cutter bar header at the time it entered into the Purchase Agreement. If this is in fact the case, Hart–Carter contends, then HCC committed a fraud. HCC has opposed the amendment, and we shall therefore address it below.

## II. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact, and.... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

## III. Discussion

### A. Defendant's Motion for Summary Judgment

■ In *Lumpkin v. Envirodyne Indus.*, 933 F.2d 449 (7th Cir.), *cert. denied*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991), the Seventh Circuit articulated the proper approach when construing the terms of a contract in conjunction with a dispositive motion:

> In construing the terms of a contract, a court is required to engage in a two-fold inquiry. First, it is necessary to look at the plain language of the provision at issue. Reviewing Illinois law, this Court has noted that "[t]he starting point must be the contract itself. If the language of the contract unambiguously provides an answer to the question at hand, the inquiry is over." ... If the court finds that a contract is ambiguous and that extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law for the court to decide. However, if the parties dispute the extrinsic evidence on an ambiguous contract, then a factfinder must be called upon to determine the intent of the parties.

*Id.* at 456 (citations omitted). Hart–Carter asserts that the relevant provisions of the Purchase Agreement are ambiguous. In support, it advances three possible interpretations of Section 6.6 which, Hart–Carter maintains, are supported by the language of the agreement. First, it suggests that Section 6.6 could mean that HCC has an obligation to contribute to the cost of the defense and settlement if HCC produced and sold components for the MF 9100 Series header. Second, Hart–Carter asserts that the section could mean that HCC must contribute if HCC produced and sold other products for which Massey–Ferguson sought indemnification from Hart–Carter, such as components of the MF 9750 Series header. Finally, Hart–Carter maintains that Section 6.6 could mean that HCC must contribute if HCC sold

the Generation III floating cutter bar, because the Generation III floating cutter bar was similar to the MF 9100 Series floating cutter bar, except that it was designed to be retrofit on the combine header.[2] Hart–Carter asserts that, because the agreement is ambiguous and the extrinsic evidence regarding the purpose of the contribution provisions are disputed, summary judgment is inappropriate.

HCC, on the other hand, argues that the agreement is not ambiguous. HCC notes that "flexible cutter bar assemblies, spring assemblies, long dividers and certain other components," as listed in Exhibit 8 to the Purchase Agreement, together form a floating cutter bar. HCC therefore contends that the phrase "products and/or components" referred to in Section 6.6 of the agreement, when read in conjunction with Exhibit 8, simply means the completed floating cutter bar which was sold to Massey–Ferguson for assembly on the MF 9100 Series floating cutter bar header. HCC contends that, because it has not sold that particular floating cutter bar since the date of the Purchase Agreement, it is entitled to summary judgment.

While we concur with HCC that the Purchase Agreement is unambiguous, we disagree as to the proper interpretation. HCC seems to assert that "products and/or components" refers solely to the completed product at issue—the floating cutter bar. However, if that were the case, then the addition of "and/or components" would be superfluous. We are unwilling to reject a portion of a contract as meaningless. *See, e.g., Berkeley Properties v. Balcor Pension Investors, II,* 227 Ill.App.3d 992, 169 Ill.Dec. 576, 582, 592 N.E.2d 63, 69 (1992). Accordingly, the plain language of Section 6.6 clearly applies to both the product at issue (i.e., the completed floating cutter bar) and its "components."[3] That having been said, two issues remain. First, we must determine which floating cutter bar the section is referring to, and sec-

---

**2.** Hart–Carter also identifies, but does not endorse, a fourth alternative: the interpretation advanced by HCC, as discussed above.

**3.** HCC acknowledges this possible construction in its reply brief, but argues that it did not produce or sell "components" of the relevant product either. We shall address this argument further below.

ond, we must determine what constitute "components" within the meaning of the Purchase Agreement.

Section 6.6 is not the only relevant provision for consideration of these issues. The terms of that section clearly limit HCC's contribution obligation to expenses incurred in connection with "any claims made by Massey–Ferguson ... *as described in Exhibit 8.*" Exhibit 8, in turn, limits the claims at issue to those based upon Hart–Carter's sale of the floating cutter bar (or, more specifically, its components) for the MF 9100 Series. Reading Section 6.6 and Exhibit 8 together, then, it is clear from the Purchase Agreement that HCC was only obligated to contribute if it produced and sold the floating cutter bar for the MF 9100 Series, or its components.

As discussed above, Hart–Carter posits that HCC's production and sale of the floating cutter bar for the MF 9750 Series and the production and sale of the Generation III floating cutter bar are sufficient to trigger HCC's obligation under the Purchase Agreement. For the reasons stated above, however, it is clear that these floating cutter bars were not included in the parties' agreement, and thus can not provide the basis for HCC's liability. Hart–Carter's only response is that Section 6.6 should be read to include all claims actually brought in, or implicated by, the Massey–Ferguson litigation. To do so, however, would effectively read Exhibit 8 out of the Purchase Agreement, contrary to well-established principles of contract law. *See, e.g., Chicago Pacific Corp. v. Canada Life Assurance Co.,* 850 F.2d 334, 338 (7th Cir. 1988) ("[W]hen a contract incorporates another document by reference, the incorporated document binds the parties...."). Accordingly, HCC's manufacture of *other* floating cutter bars does not give rise to a contribution obligation under the terms of the Purchase Agreement.[4]

Having concluded that the "product" at issue is the floating cutter bar for the MF 9100 Series floating cutter bar header, we must determine what constitute its "components" within the meaning of the Purchase Agreement, and whether HCC ever produced and sold those components. Hart–Carter asserts that HCC has, in fact, produced such components, and identifies nine parts which HCC has produced. These parts include five different·brackets, a skid plate, an attach pad, and a divot stop. Accordingly, Hart–Carter contends that summary judgment for HCC is inappropriate. We disagree. Section 6.6 unambiguously provides that HCC's liability is triggered only if it produces and sells the "products and/or components *that are the subject of*" the claims made by Massey–Ferguson. Hart–Carter does not, and presumably can not, allege that the brackets, skid plate, attach pad, and divot stop were subjects of Massey–Ferguson's claim. Instead, it is clear that the components at issue in the Massey–Ferguson suit were akin to those listed in Exhibit 8, including flexible cutter bar assemblies, spring assemblies, and long dividers.[5] While these components may well have been the basis for Massey–Ferguson's claim against Hart–Carter, there is no allegation that the individual parts that made up these components were the subjects of the Massey–Ferguson third-party action, or of John Deere's suit against Massey–Ferguson. Accordingly, under the plain language of the Purchase Agreement, HCC's production of these individual parts simply does not provide a basis for Hart–Carter's action against HCC.

In sum, we conclude that the Purchase Agreement between Hart–Carter and HCC is unambiguous, and that HCC has not engaged in any action which would give rise to contribution liability under that agreement. Accordingly, HCC is entitled to summary judgment on the breach of contract claim.

---

**4.** In further support, we note that Hart–Carter manufactured the Generation III floating cutter bar prior to execution of the purchase agreement, and offered it at the same time it sold the floating cutter bar for the MF 9100 Series. Accordingly, Hart–Carter could well have included the Generation III in the Purchase Agreement, but did not.

**5.** Indeed, the items listed by Hart–Carter are, in fact, parts of one of the listed components, a flexible cutter bar assembly.

**B. Plaintiff's Motion for Leave to File Its Second Amended Complaint**

 Although leave to amend a complaint is to be "freely given," *see* Fed. R.Civ.P. 15(a), such leave may be denied upon a demonstration of undue delay by the movant, undue prejudice to the opposing party, or the futility of the proposed amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). In *Cleveland v. Porca Co.*, 38 F.3d 289 (7th Cir.1994), the Seventh Circuit addressed a situation virtually indistinguishable from the one presented here:

> In this case, the plaintiffs filed their motion to amend after discovery was completed and after the motions for summary judgment were fully briefed. The plaintiffs sought to add an entirely new claim against the [defendant] based on ERISA. This motion came late in the day. The defendants had already filed witness and exhibit lists with the court.... Again, under these circumstances the district court did not abuse its discretion in denying the motion to amend the amended complaint. *See, e.g., Murphy v. White Hen Pantry Co.*, 691 F.2d 350, 353 (7th Cir.1982) (district court did not abuse its discretion in refusing to allow plaintiffs to amend their complaint where motion was filed after parties had completed discovery and where motion would inject an entirely new theory into the litigation); *Kleinhans v. Lisle Sav. Profit Sharing Trust*, 810 F.2d 618, 625 (7th Cir.1987) (district court did not abuse its discretion in denying leave to amend complaint where proposed amendment came after the close of discovery and after defendants moved for summary judgment—the motion represents an apparent attempt to avoid the effect of summary judgment).

*Cleveland*, 38 F.3d at 297–98. In the present case, discovery was long closed, the pretrial order had been filed, and the motion for summary judgment was fully briefed before

Hart–Carter sought leave to amend. Even if the McNair declaration, filed on November 1, 1994, provides some explanation as to why Hart–Carter did not assert its fraud claim before that date, Hart–Carter has offered no explanation as to why it waited over one and one-half months before seeking leave to file an amended complaint. Under these circumstances, we conclude that there has been undue delay by Hart–Carter in bringing the present motion, and that this belated motion was, at bottom, an effort to avoid the likely effect of HCC's motion for summary judgment.[6] Accordingly, Hart–Carter's motion for leave to file its second amended complaint is denied.

## IV. Conclusion

For the reasons set forth above, HCC, Inc.'s motion for summary judgment is granted and Hart–Carter Company's motion for leave to file its second amended complaint is denied. It is so ordered.

---

6. Furthermore, although we do not reach the issue of whether the proposed amendment is futile, we agree with HCC that the claim is questionable on the merits. *See* Def.'s Mem. Op. at 2 n. 1. The language of Section 6.6 of the Purchase Agreement is conditional (*i.e., if* HCC sells

the relevant product, *then* ...), and Hart–Carter does not allege that HCC represented that it *would* sell the relevant cutter bar header. Under these circumstances, we believe that Hart–Carter would face an uphill battle, both factually and legally, to prevail on its fraud claim.