Leroy LADSON, Plaintiff,

v.

ULLTRA EAST PARKING CORPORATION, Lerner Management Corporation, and L.P.S. Management Corporation, Defendants.

Leroy LADSON, Plaintiff,

v.

ULLTRA EAST PARKING CORPORATION, L.P.S. Management Corporation, and Alan Tretin, Defendants.

Leroy LADSON, Plaintiff,

v.

ULLTRA EAST PARKING CORPORATION, Defendant.

Nos. 92 Civ. 0440 (LAK), 92 Civ. 0147 (LAK) and 92 Civ. 4894 (LAK).

United States District Court, S.D. New York.

March 15, 1995.

---

Leroy Ladson, pro se.

Kevin G. Chapman, Kauff, McClain & McGuire, for defendants.

## OPINION

KAPLAN, District Judge.

These three actions have been consolidated for pre-trial purposes. Each arises out of the employment relationship between plaintiff Leroy Ladson and defendant Ulltra East

Parking Corporation ("Ulltra"). Ladson claims that his employment was wrongfully terminated and that Ulltra is indebted to him for certain allegedly unpaid benefits. The matters are before the Court on defendants' motion to dismiss No. 92–4894 for lack of jurisdiction and to exclude certain evidence in the trial of these actions.

### Facts

Plaintiff worked for more than twenty years as an attendant at a parking garage located at 200 Clinton Street in Manhattan. The garage was operated by the Seward Park Housing Corporation until July 1, 1990, when control passed to defendant Ulltra. Ulltra terminated Ladson's employment on October 15, 1990, allegedly after receiving complaints from customers and after giving plaintiff several written warnings relating to his alleged failure to adhere to proper garage procedures. (Ull Aff. ¶ 4) Plaintiff denies that he ever received written warnings prior to his termination, and further denies any wrongdoing in his employment duties. (Ladson Aff. at 2)

There is evidence of past corruption involving the management of area garages and the Garage Employees Union Local No. 272 ("Local 272"), which represents workers in the garage in question as well as many others. The corruption appears to have spanned several years, from 1976 to 1992. One result was a criminal prosecution, *United States v. Salerno,* No. 92 Cr. 551, in the Southern District of New York. The three defendants in that case, Charles Salerno, Eugene Bennett and Victor Alfieri, were officers and employees of Local 272. Each defendant was convicted upon his plea of guilty to violations of the Racketeering and Corrupt Influenced Organizations ("RICO") Act relating to his employment with Local 272. Each defendant admitted in his plea allocution accepting thousands of dollars in illegal payments from garage owners. Plaintiff now alleges that Local 272 and his former employer were involved in a conspiracy whereby garage owners bribed union officials to acquiesce in the firing of older and black union members, including plaintiff. (*See* Schneider Dep. at 19–20, 66–75, Ladson Aff. Ex 3)

During the time relevant to the termination of plaintiff's employment, Ulltra was bound by the collective bargaining agreement already in place between Local 272 and the Metropolitan Garage Owners Association, Inc. (the "MGOA"). (Ull Aff. ¶ 2) Local 272 filed a grievance against Ulltra relating to plaintiff's termination. The arbitrator found that Mr. Ladson had been discharged in violation of the collective bargaining agreement and was entitled to "immediate reinstatement with no loss of seniority or benefits accorded him under the current Collective Bargaining Agreement." (Ull Aff.Ex. D, at 24) A clarification, issued on September 18, 1992, required defendant to pay plaintiff the cash value of the benefits plaintiff lost between October 15, 1990 and May 15, 1992. (Ull Aff. ¶¶ 8–10) Defendant paid plaintiff $6,590.95 in several installments between October 5, 1992 and March 15, 1993. (*See* Ull Aff.Ex. E)

At least four lawsuits have been filed in the wake of these events. On January 9, 1992, plaintiff commenced No. 92–0147, which alleges that Ulltra and Lerner Management Corporation discriminated against him based on his race and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and § 7(b) of the Age Discrimination in Employment Act of 1967 (the "ADEA"), 29 U.S.C. § 626(b).

On January 17, 1992, plaintiff brought No. 92–0440, which alleges that defendants violated 42 U.S.C. §§ 1981(a), 1985 and 1986.

On April 24, 1992, plaintiff brought No. 92–2994, which is now before Judge Haight. That action charges Ulltra and Local 272 with breach of the collective bargaining agreement. It further charges Local 272 with breach of its duty of fair representation. Local 272's motion for summary judgment was granted. *Ladson v. Union Local 272,* No. 92 Civ. 2994, 1993 WL 405429, (S.D.N.Y. Oct. 1, 1993). Ulltra's motion for summary judgment is pending.

Finally, No. 92–4894 was filed on July 1, 1992. It alleges that Ulltra violated Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. § 185. Specifically, plaintiff alleges that he was not granted the benefits to which he was entitled

**28**

under the collective bargaining agreement and the arbitration award. (Cpt ¶¶ XV, XIX–XX)

## Discussion

### Motion to Dismiss No. 92–4894

In No. 92–4894, plaintiff seeks to recover the difference between the amount paid to him by Ulltra pursuant to the arbitrator's award and the amount plaintiff claims should have been paid. The crux of the dispute is this: The collective bargaining agreement between Local 272 and the MGOA expired on February 6, 1992. Therefore, in paying plaintiff pursuant to the award for vacation benefits for the last four months of the 1991–92 benefit year, Ulltra did not calculate the value of the benefits owed to plaintiff based on the terms of the collective bargaining agreement. Rather, the calculation was based on new, and less favorable, terms and conditions of employment implemented by Ulltra on April 24, 1992 and retroactive to February 6, 1992.[1] (Ull Aff. ¶ 13)

Defendants now move for dismissal of No. 92–4894 on the ground that the Court lacks subject matter jurisdiction over a 29 U.S.C. § 185 claim brought by an individual union member. Plaintiff's claim, whether viewed as an action to enforce the arbitration award or as action for breach of the collective bargaining agreement, must be dismissed.

■ An individual employee represented by a union does not have standing to challenge or seek confirmation of an arbitration award because the employee is not a party to the collective bargaining agreement or to the arbitration between the union and the company. *Katir v. Columbia University*, 15 F.3d 23, 24–25 (2d Cir.1994) (per curium). There is a well-established exception which allows an individual employee to challenge or seek to confirm or modify an arbitration award when the employee claims also that the union breached its duty of fair representation. *Katir*, 15 F.3d at 24–25; *Cleveland v. Porca Co.*, 38 F.3d 289, 296–97 (7th Cir.1994);

*Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1244 (7th Cir.1990). But that exception does not apply here.

■ Plaintiff has not made a claim against Local 272 in No. 92–4894 for breach of the duty of fair representation. His claim for breach of the duty of fair representation in the case before Judge Haight, *Ladson v. Union Local 272*, No. 92–2994, does not remedy that deficiency. No. 92–2994 was commenced on April 24, 1992, nearly five months before the arbitrator issued the clarification of the award which provides the basis for the complaint in No. 92–4894. In consequence, the fair representation claim before Judge Haight, which in any case has been dismissed, had nothing to do with plaintiff's current contention that he did not receive the benefits to which he claims he is entitled under the arbitration award as clarified. Since there is no claim that Local 272 did not fairly represent him in that regard—indeed, it obtained the clarification on which plaintiff bases his claim—plaintiff has no standing to enforce the award directly. This would be so even if the complaint were interpreted as a claim against defendants for breach of the collective bargaining agreement. *Cleveland v. Porca Co.*, 38 F.3d at 297; *McNair v. United States Postal Service*, 768 F.2d 730, 735 (5th Cir.1985). Nothing in *Ruby–Collins, Inc. v. City of Huntsville*, 748 F.2d 573 (11th Cir.1984), relied upon by plaintiff, is to the contrary.

### Motions *in limine*

■ As noted, plaintiff claims that his termination was a product of a conspiracy between Local 272 officials and garage owners in which the owners bribed union leaders. There is abundant evidence of corruption in the industry, albeit little if any connecting corruption directly to plaintiff's termination. Defendants understandably seek to exclude any reference to alleged bribes and, more specifically, to exclude (1) the transcript of Eugene Bennett's sentencing hearing (*see*

---

1. The National Labor Relations Board (the "NLRB") filed a complaint, on July 28, 1992, charging the MGOA and its members with unfair labor practices in connection with their imposition of these terms and conditions of employ-

ment. (*See* Ull Aff.Ex. H) At the time of submission of defendants' motion papers to this Court, the trial was underway before an Administrative Law Judge of the NLRB. (Ull Aff. ¶ 14)

Ull Aff. Ex. K), and (2) two pages from a ledger allegedly documenting illegal payments made by Ull to Bennett during Bennett's tenure as an officer of Local 272 (*see* Ull Aff. Ex. I).

We are quite mindful of the potential for unfair prejudice in the event plaintiff mentions allegations of corruption and then fails to connect them to his own circumstances. At this stage, however, we lack sufficient information to make an informed ruling on this point. Accordingly, defendants' broad motion to preclude any reference to alleged bribes is denied at this time subject to reconsideration at trial. Plaintiff, however, is directed to advise defendants and the Court *in writing* at least one week prior to trial of the precise nature of the claims of corruption he intends to make and of the specific evidence he proposes to offer in order to permit the Court to rule on any objections. We turn, then, to the two specific issues raised by defendants.

*Transcript of Bennett's Sentencing Hearing*

The transcript of Bennett's sentencing hearing is hearsay and does not fall within any of the exceptions to the hearsay rule. Fed.R.Evid. 801. It is therefore inadmissible to prove the truth of the matters asserted. We exclude the allocution and any reference to it in plaintiff's opening statement. However, plaintiff plans to call Bennett as a witness at trial (Ladson Aff. at 6 & Joint PTO at 3). In the event that Bennett testifies at trial, plaintiff may elicit testimony concerning Bennett's actions to the extent that the testimony is relevant and the probative value of the testimony is not substantially outweighed by danger of unfair prejudice, confusion of the issues or misleading the jury. Fed.R.Evid. 401, 403. The allocution may be usable in connection with such testimony to impeach or to refresh recollection.

*Ledger Pages*

Defendants seek to exclude two ledger pages (*see* Ull Aff. Ex. I) which, plaintiff alleges, are documentary evidence of illegal bribes paid to Bennett from June 1976 through 1984 while he was an employee and officer of Local 272. Plaintiff claims that he received the two pages in an unmarked envelope in the mail and that he has no idea who sent them to him. (Ladson Dep. 226–27, Ull Aff.Ex. J) He alleges that the handwriting is that of Robert Ull, the president of Ulltra and an officer of defendant L.P.S. Management Corporation. Plaintiff further alleges that the initials of Ull and other officers of the defendant corporations appear on the document. (Ladson Aff. 4–5) The Court notes that the heading "Gene Bennett (272)" appears at top of one of the pages.

If the ledger pages are what plaintiff claims, they are relevant here. According to Robert Schneider, a supervisor at Ulltra at the time plaintiff was fired, garage owners including Ull paid bribes to Local 272 officers in order to ensure that the systematic firing of minority and union workers was not challenged by the union. (Schneider Dep. 66–75, Ladson Aff. Ex. 3) According to the plea allocutions of the three defendants in the racketeering case, the purpose of the illegal payments by garage owners over an extended period of time was to maintain the "good will" of the union officials and to "buy labor peace." (Ladson Aff.Ex. 1 at 9; Ex. 2 at 9; Ex. B at 10) While we recognize that the ledger pages cover a period ending in 1984 and that plaintiff was fired in 1990, we cannot say that the ledger pages, if they are what plaintiff says they are, do not come within Fed.R.Evid. 401.

The question whether the ledger pages are what plaintiff claims raises issues of authenticity (i.e., is the handwriting that of Ull) and conditional relevancy (i.e., is it a list of bribes paid to Bennett).

Fed.R.Evid. 901(a) provides that authenticity is sufficiently established for purposes of receipt of a document into evidence if there is "evidence sufficient to support a finding that the matter in question is what its proponent claims." That appears to be so here. Both plaintiff and Schneider identify the handwriting on the ledger as Ull's. (Ladson Dep. 228, Ull Aff.Ex. J & Schneider Dep. 43, Ladson Aff. Ex. 3) Under Rule 901(b)(2), non-expert identification of the handwriting on the document satisfies the authentication requirement, assuming competency on the part of the identifier. Furthermore, Schneider testified to having seen a document fitting the general description of the

ledger pages on Ull's desk. (Schneider Dep. 41–43, Ladson Aff. Ex. 3) Assuming the document is otherwise admissible, it will be for the trier of fact to decide if the handwriting is really Ull's.

Of course, even if the handwriting is Ull's, the question remains whether the pages record bribes, in which case they are relevant, or something else, in which case they probably are not. Under Fed.R.Evid. 104(b), when the relevancy of evidence is conditioned on a fact, the Court must admit it upon the introduction of evidence sufficient to support a finding that the condition is fulfilled. Since the document is at least consistent with the view espoused by plaintiff, it also will be for the trier of fact to decide what the document represents.

Even if all of the foregoing criteria are met at trial, as appears likely, we recognize that there will be a substantial issue as to whether the document should be excluded pursuant to Rule 403, particularly in view of its remoteness in time. As this may be affected by evidence at trial, we decline to pass on the Rule 403 issue at this time.

Accordingly, the motion to exclude the ledger pages is denied subject to renewal at trial.

### Appointment of Counsel

Plaintiff has declined at least one prior offer by the Court to seek counsel willing to represent him on a *pro bono* basis. As the foregoing makes clear, the trial of this action involves legal issues that, despite the admirable effort that plaintiff himself has made to date, are best addressed by a member of the Bar. The Court is concerned that plaintiff's lack of legal representation may prejudice his position unnecessarily. Accordingly, we afford plaintiff the final opportunity to indicate his willingness to accept either representation or advice from an attorney willing to provide it *pro bono publico* if one proves to be available. Absent receipt of a written request for such assistance within ten days hereof, the action will proceed *pro se.*

SO ORDERED.