**Willie Lee DAVIS and Willis Prejean, Plaintiffs,**

**v.**

**AMERIPOL, INC.–Goodrich Gulf Chemical Company and Oil, Chemical & Atomic Workers Local 4–228, Defendants.**

**Civ. A. No. 6753.**

United States District Court, E. D. Texas, Beaumont Division.

Jan. 17, 1972.

A. D. Downer, Houston, Tex., for plaintiffs.

Dewey J. Gonsoulin, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for defendant Ameripol.

Carl A. Parker, Long & Parker, Port Arthur, Tex., for defendant Local 4–228.

JOE J. FISHER, District Judge.

## MEMORANDUM OPINION

Plaintiff has sued both his former company employer and his union in separate counts;[1] and in support of these counts, he has divided the evidence adduced at trial into two stages. One phase of the evidence was in support of Plaintiff Willie Lee Davis, suing individually for his alleged unlawful discharge because of racial discrimination. The second phase of the evidence was in support of a class suit brought by Willis Prejean for alleged racial discriminatory practices in hiring and promotions. The dismissal of Willie Lee Davis will be considered first.

Willie Lee Davis was first employed by Defendant company in August, 1959 as a laborer in the Labor Department; he was promoted in 1965 to the Laboratory Department as a lab tester trainee. Thereafter, Davis was again promoted to A–Operator, which position he held until his dismissal in 1968.

On Sunday morning, March 3, 1968, Davis telephoned the company graveyard foreman and advised him that he would be late. Arriving late, Davis went to the production office to talk with the graveyard foreman instead of going directly to his appointed job. Davis and the graveyard foreman engaged in a heated conversation and Davis was advised by his own foreman to report to his assigned work area. After reporting to his job, Davis engaged in another argument, this time with his operator helper. The operator helper was struck on his arm and was cursed during this argument. Following this altercation, the shift foreman demanded that Davis take a urine test. Because Davis refused this demand, he was instructed to leave the plant.

After deliberating on Davis' disorderly conduct of March 3, and his giving false information to the company about the incident[2] as well as his poor prior disciplinary record,[3] the company's man-

1. Plaintiffs invoked the jurisdiction of this Court complaining of violations of the Civil Rights Act of 1964, codified as 42 U.S.C. § 2000e et seq., and of violations of 42 U.S.C. § 1981. Plaintiffs also relied on 29 U.S.C. § 151 et seq. to support an allegation of a failure to fairly represent in the arbitration proceedings conducted after Willie Lee Davis' dismissal.

2. The accounts of what actually took place during the two confrontations on March 3, 1968, vary greatly in detail. Davis alleges that the graveyard foreman cursed him, that he did not strike the operator helper, and that the operator helper threw a piece of rubber at him and then pulled a knife on him. Each of these allegations is denied by those other persons present at each event. The company's basis in determining that Plaintiff had given false information was not unsubstantiated, but rather gleaned from all the accounts supplied by its own employees.

3. Plaintiff strongly stresses that his disciplinary record was not any more heinous

agement permanently terminated Davis' employment on March 8, 1968. Davis, therefore, filed a grievance with his Union and had his claim processed unsuccessfully through arbitration.

█ █ Counsel for Defendants urges that Plaintiff Davis has made a final and binding election of remedies in seeking arbitration; and that under Dewey v. Reynolds Metals Company, 429 F.2d 324 (6th Cir. 1970), aff'd, 402 U.S. 689, 91 S.Ct. 2186, 29 L.Ed.2d 267, he is therefore bound by the decision of the arbitrator. On the other hand, counsel for Plaintiff urges that this Court should follow as controlling precedent Hutchings v. United States Industries, Inc., 428 F. 2d 303 (5th Cir. 1970) in which it is held that an employee does not make a final, binding election of remedies by pursuing a grievance under a collective bargaining agreement. While this Court has previously expressed its opinion on this

subject,[4] it is not necessary that a choice now be made between the rationales of Dewey and Hutchings. In the instant case, Plaintiff has not produced sufficient evidence to question the integrity [5] of the decision reached in arbitration. The evidence here presented appears to be much the same as that which was previously considered in the arbitration process,[6] and the weight of that fact finding has settled this issue. The Court, therefore, finds that Willie Lee Davis was not illegally discharged.

█ The second issue developed in trial concentrated on additional evidence to support the class action allegations alleged by Willis Prejean. Defendant Company has procedurally challenged the class action allegations because the requirements of Fed.R.Civ.P. 23 have not been met, in that neither Willis Prejean nor Willie Lee Davis are proper representatives of the class they seek to repre-

than other employees who had similar disciplinary records, and that the ultimate penalty of dismissal was therefore undeserved. See Plaintiff's Brief, at p. 6. However, it should be noted that the prior conduct of Plaintiff had not been precipitative of his dismissal, but only of written reprimands and suspensions. This conduct was only, therefore, of probative value to management, and could hardly be considered the determinative factor in its decision. Naturally, management was concerned with the past record of this employee when it weighed the gravity of the offense and the alternative punishments. The realities of this situation was understood by the arbitrator when he stated

. . . In general, the past conduct of the grievant is of concern to this arbitrator. No arbitrator can fail to take note of a good record and at the same time the arbitrator must take note of a poor record. As stated by Arbitrator John Day Larkin in Borg-Warner, 22 L.A. 589: "By the same token, if an employee's past performance has been one of increasing disregard of his responsibilities to his job and to the employer who is paying him, no arbitrator can rightly sweep this sort of evidence under the rug. . . ."
See Arbitrator's Decision, at 28.

4. See Hutchings v. United States Industries, Inc., 309 F.Supp. 691 (E.D.Tex. 1969), rev'd., 428 F.2d 303, 5 Cir., (1970). This Court decided the Hutchings case initially at the district level in much the same fashion as did the Dewey v. Reynolds Metals Company case.

5. The arbitration proceedings were fair, deliberate and conducted in all seriousness, fully aware of the attendant responsibilities as evidenced by the following passages from the arbitration decision:

The fact that an arbitrator should not substitute his judgment for that of Management does not mean that an arbitrator should not step in and substitute his judgement for that of Management when the evidence shows that Management was unreasonable, arbitrary or capricious. In this instance, Management had all the facts, it did not act hastily, and there is no evidence that the decision was arbitrary, unreasonable or capricious, or that the decision was made in bad faith or clearly wrong. See Arbitrator's Decision, p. 27.

6. It is interesting to note that Plaintiff Davis contended that he had been prevented from presenting a complete defense at the arbitration proceedings by the Union because there were witnesses

sent.[7] Defendant's arguments are well taken, and therefore no relief can be given Plaintiffs. Under the authority of Newman v. Avco Corp., 313 F.Supp. 1069 (M.D.Tenn.1970), Davis cannot sue on behalf of a class of which he is not a member. Having been found in arbitration to have not been improperly dismissed, he can have no claim in this regard. Likewise, Willis Prejean cannot assert a claim for the class he wishes to represent because he has not been discriminated against with respect to his hiring and subsequent promotions. The evidence clearly shows that Prejean was offered his first promotion nine months before the Civil Rights Act became effective, which promotion he refused; moreover, he was offered the job of A-operator in 1967. In 1969, Prejean was offered and accepted the position of utility operator, the highest paying job in the OCAW bargaining unit; holding this job for one week, he voluntarily chose to go back to his job as A-operator, and admittedly not because of racial reasons.[8] Besides showing Prejean's history of promotions, the record indicates that Prejean was not required to take any tests for hiring; and, although he was required to take a test for the job of A-operator, the test was passed and Prejean obtained the position. More-

over, the record also establishes that Prejean was not qualified for those craft positions for which he applied [9] whereas there have been Negro employees hired in the craft units when they have met the experience requirements. Thus, having been racially discriminated against in neither his hiring nor his promotions, Plaintiff Prejean cannot obtain relief individually and is not a proper party to assert and conscientiously assure adequate presentation of any claims that might be rightly offered by members of a class affected.[10] Moreover, even had Prejean been a proper party to bring this suit, the evidence adduced would not afford any relief to the class because there has been no showing of discrimination.

Class claims have centered around the availability of training and apprenticeship programs in the craft units; the filling of craft jobs by new, inexperienced Caucasians when denied to Negro employees with seniority; and, the testing procedures used to fill vacancies within the company. The testimony presented at trial establishes that Plaintiffs have not proved these charges. There are no training and apprenticeship programs operated by Defendant Company, except in the instruments department which requires specialized training in

available on his behalf that the Union failed or refused to call. At this trial, Plaintiff did not call any such witnesses although he had ample opportunity to substantiate the testimony that he alleges they would have given. The evidence as presented thusly does not support a complaint based on 29 U.S.C. § 151 et seq.

7. Fed.R.Civ.P. 23(a) states:
   One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. . . .

8. Prejean's motivation appears to be economic, namely that the overtime available to A-operators is so ample that he can earn more money in this position.

9. Prejean was refused these jobs because he did not have at least four years craft on the job experience, or equivalent training in a craft apprenticeship program.

10. See generally Oatis v. Crown Zellerbach, 398 F.2d 496, 498–499 (5th Cir. 1968) which notes that once an aggrieved party has filed EEOC charges he can sue for himself and for a class, but he can sue for the class only when he can meet the requisites of Rule 23. Thus, a plaintiff has standing to raise only those issues to which he is aggrieved, and those asserted for class members must be the same or similar. See also King v. Georgia Power Co., 295 F.Supp. 943, 947–948 (N.D.Ga.1968).

sophisticated electronics peculiar to Defendant's business; moreover, the law does not require Defendant to institute such programs. As to the other claims, the record reveals that the company has hired qualified Negro applicants in craft jobs and that the company has permitted Negro applicants to transfer to craft jobs when they are qualified.[11] No testimony was presented to establish that any person had been denied hiring or promotions because he had failed to pass a test; in fact, almost all tests have been discontinued by Defendant company since 1970, prior to the date of the filing of this lawsuit.[12]

■ In conclusion, it may be noted that the Defendants have attempted to eliminate possible racial discrimination in their bargaining efforts as evidenced by their resulting contracts. For example, divisional seniority was eliminated in 1968 shortly after Quarles v. Philip Morris, Inc., 279 F.Supp. 505 (E.D.Va. 1968). Such activity as this tends to indicate that the company has endeavored to voluntarily extend civil rights to its employees. It is simply a fact of life that racial discrimination existed frequently in hiring and promotion policies of many companies until the advent of civil rights legislation; however, when companies have attempted and achieved voluntary compliance with the civil rights legislation and its companion case law prior to the institution of any litigation, the plaintiffs should not receive any injunctive relief or damages. Oatis v. Crown Zellerbach Corp., 398 F.2d 496 (5th Cir. 1968); Quarles v. Philip Morris, Inc., 279 F.Supp. 505 (E.D.Va.1968); Ac-

cord, Whitfield v. United Steelworkers, 263 F.2d 546 (5th Cir. 1959).

Final Judgment will be entered in accordance herewith.

11. In 1966, Defendant company employed two Negroes in the pipe department as pipefitters and they have continued in that capacity. In 1970, another Negro transferred from the production department to the paint department.

12. One simple test of reading and writing is still given to oilers and forklift tractor drivers. Such tests are necessary for successful job performance because an oiler is required to read labels on oil drums to determine which oil to use and because a forklift tractor driver is required to read warning signs, such as "Slow", "Stop" and "Danger". These tests are not discriminatory racially and show sufficient relation to job performance to justify their use.