Kenny A. PAYNE, Petitioner,

v.

GIANT FOOD, INC., Respondent.

No. CIV.A.04–0662 ESH.

United States District Court, District of Columbia.

Oct. 20, 2004.

JoAnn Patricia Myles, Law Office of Joann P. Myles, Largo, MD, for Petitioner.

Edward Ross Levin, Schmeltzer, Aptaker & Shepard, P.C., Washington, DC, for Respondent.

### MEMORANDUM OPINION

HUVELLE, District Judge.

Petitioner Kenny Payne has moved to vacate and modify the arbitrator's March 24, 2004 award rendered in a labor arbitration between Giant Food LLC ("Giant"), his former employer, and Teamsters Warehouse Employees Union No. 730 ("Union"), his exclusive collective bargaining representative. In opposition, Giant moves to dismiss the petition on the grounds that petitioner lacks standing; the petition is moot because the grievance was withdrawn from arbitration before it became final; and the petition presents no valid basis to vacate or modify the arbitration award. As explained more fully below, the Court agrees that petitioner lacks standing, or in the alternative, he has failed to present any valid basis for attacking the award and therefore Giant's motion to dismiss is granted, petitioner's motion for summary judgment is denied and the petition is dismissed with prejudice.

## BACKGROUND

Petitioner was employed as a produce janitor with Giant and was a Union member. On April 18, 2002, Payne was suspended from work pending discharge and was then discharged from employment on May 3, 2002, based on several alleged incidents of insubordination and threats to supervisors and management. Pursuant to the collective bargaining agreement ("CBA") between the Union and Giant, Payne requested an investigation by the Union pursuant to Article 13, § 13.5. (*See* Respondent's Mot. App. B ["CBA"] at 8.) Thereafter, the Union pursued its rights to grieve and to take the matter to a final and binding arbitration proceeding under Article 27. (*Id.* at 17–18.)

An arbitrator was selected jointly by Giant and the Union and the issue submitted for arbitration was: did Giant have just cause to terminate Payne, and if not, what shall be the appropriate remedy? (Respondent's Mot. App. A. at 2.) After taking testimony from many witnesses at an arbitration hearing held on June 19, 2003 (Payne Decl. ¶ 11; Respondent's Mot. App. M at 1), the arbitrator rendered his fourteen-page decision on March 24, 2004. (Respondent's Mot. App. A.) He concluded that although there was a heated dispute between Payne and his supervisor regarding a task that he had been paged to perform, Payne's conduct, while "intemperate," "did not amount to threatening or intimidating behavior." (*Id.* at 13.) Nonetheless, the arbitrator concluded that Payne's "behavior [was] inexcusable and cannot be tolerated in the workplace." (*Id.* at 14.) Noting that Payne had "previously been suspended for one month in 1998 for intimidating a co-worker," the arbitrator concluded that Payne had "not learned from his prior disciplinary indiscretions." (*Id.*) Thus, he ordered that the grievance was granted in part insofar as Payne was to be reinstated without back pay or benefits but reinstatement was to be conditioned upon Payne entering into a last-chance agreement with Giant that was to be in effect for two years, and if there were further instances of similar misconduct, Giant could discipline Payne summarily, "up to and including termination." (*Id.*)

At the hearing, Giant presented evidence of previous disciplinary warnings Payne had received. (Payne Aff. ¶¶ 12–15.) The Union's attorney objected to this evidence. (*Id.* ¶¶ 12, 14.) After the hearing, a dispute arose about what portions of an employee's employment history could be considered in assessing a penalty for a current infraction. To resolve the dispute, apparently unbeknownst to Payne, the Union and Giant proposed a stipulation based on the "acknowledged practices between the parties in the arbitration," whereby the parties agreed that evidence of Mr. Payne's suspension in 1998 and a disciplinary incident in 2000 could be considered as to the issues of Mr. Payne's credibility and the appropriate penalty. (Respondent's Mot.App. E ["Stipulation"] at 1.)[1]

As to the last-chance agreement, the arbitrator initially left the specifics to the parties. When an agreement could not be reached, Giant and the Union contacted the arbitrator to request that he exercise his retained jurisdiction to complete the details of the remedial conditions and issue a final order. Meanwhile, Payne filed a "Petition to Notice to Vacate and Modify" the award. A hearing was then set for May 4, 2004, to present argument regarding the terms of the last-chance agree-

---

1. There is some dispute over whether the stipulation was properly executed. (*See* Petitioner's Opp. at 5).

ment. Payne appeared to protest the arbitrator's decision. By letter dated May 5, 2004, Jo Ann Myles, an attorney representing Payne, wrote the arbitrator informing him that Payne had appealed his March 24 arbitration decision, dismissed the Union as his representative and withdrew any issue that the Union had asked him to consider on his behalf claiming that he would not enter into any last-chance agreement. (*Id.* App. I.) Attached was a statement from Payne attesting to these statements and agreeing that the arbitration matters that were before the arbitrator should be dismissed. (*Id.*) The Union then followed up by a June 1, 2004 letter to the arbitrator withdrawing the matter from the arbitrator's consideration. (*Id.* App. J.)

On April 23, 2004, petitioner filed a *pro se* Petition to Notice to Vacate and Modify Arbitrator's March 24, 2004 Award. He thereafter amended his petition on June 12, 2004, seeking to vacate that portion of the award that denied him back pay and conditioning his reinstatement on a last-chance agreement and requesting the Court to order that he be returned to work immediately with back pay, benefits and attorney's fees. Giant thereafter filed a motion to dismiss, or in the alternative, for summary judgment. Petitioner, now represented by counsel, opposed this motion and filed his own cross-motion for summary judgment.

## ANALYSIS

### I. Standing

 It is well-settled that an employee who is bound by arbitration procedures in a collective bargaining agreement "will be bound by the result" of an arbitration according to the agreement's finality provisions,[2] "[s]ubject to very limited judicial review." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983); *Cleveland v. Porca Co.*, 38 F.3d 289, 296–97 (7th Cir. 1994) (employees lacked standing to challenge an arbitration award because "when employees are represented by a union they are not parties to either the collective bargaining agreement or any union-company arbitration"). The Supreme Court has described an exception to this general rule: an employee may obtain judicial review of an arbitrator's award if the "union as bargaining agent breached its duty of fair representation."[3] *Vaca v. Sipes*, 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); *see also O'Hara v. Dist. No. 1–PCD, MEBA, AFL–CIO*, 56 F.3d 1514, 1520 (D.C.Cir.1995) (an employee may challenge the employer's breach of collective bargaining agreement in federal court only by establishing that the union breached its duty of fair representation in connection with the grievance process," and this "protects the finality of arbitration awards and ensures that an employer will not twice be called to answer for the same conduct once it has prevailed in the grievance process, unless the union has tainted that process through a breach of its duty of fair representation"); *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 131 (4th Cir. 2002); *Katir v. Columbia Univ.*, 15 F.3d 23, 24–25 (2d Cir.1994) (per curiam); *Ba-*

**2.** The collective bargaining agreement between Giant and the Union provides that "[t]he decision of the arbitrator shall be final and binding on both parties hereto." (CBA at 18 (Article 27, § 27.3).)

**3.** Alternatively, an employee may obtain judicial review if he or she alleges that the employer repudiated the collective bargaining agreement's grievance procedures. *Vaca*, 386 U.S. at 185, 87 S.Ct. 903; *see also Chester v. Washington Metro. Area Transit Auth.*, Civ. , 335 F.Supp.2d 57, 64–65 (D.D.C.2004). However, petitioner has made no such allegation here.

*cashihua v. U.S. Postal Serv.*, 859 F.2d 402, 405–06 (6th Cir.1988); *Vosch v. Werner Cont'l, Inc.*, 734 F.2d 149, 154 (3d Cir.1984); *Chester*, 335 F.Supp.2d at 64–65; *Blake v. Potter*, No. 03 Civ. 743(MBM), 2004 WL 830072, at *2 (S.D.N.Y. April 15, 2004). Respondent argues that petitioner, as an individual union member, lacks standing to challenge the arbitration award because he "has not alleged any breach of the duty of fair representation by Local 730." (Respondent's Mot. at 9.)

■ "A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190, 87 S.Ct. 903. "This standard applies to all levels of a union's representation, from contract negotiations to enforcement and grievance proceedings," and a union is "entitled to great deference in performing its representational duties." *Gwin v. Nat'l Marine Eng'rs Beneficial Ass'n*, 966 F.Supp. 4, 7 (D.D.C.1997) (citing *Air Line Pilots Ass'n Int'l v. O'Neill*, 499 U.S. 65, 77–78, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991)), *aff'd*, 159 F.3d 636 (D.C.Cir.1998). "In other words," the Union breaches its duty only when its behavior is "'so far outside a wide range of reasonableness that it is wholly irrational or arbitrary,'" *Local 300, Nat'l Postal Mail Handlers Union v. Nat'l Postal Mail Handlers Union*, 764 F.Supp. 199, 206–07 (D.D.C.1991) (quoting *Air Line Pilots*

*Ass'n*, 499 U.S. at 66, 111 S.Ct. 1127), *aff'd*, 976 F.2d 1444 (D.C.Cir.1992), and it will be deemed to have acted in bad faith only when there is "substantial evidence of fraud, deceitful action, or dishonest conduct." *Humphrey v. Moore*, 375 U.S. 335, 348, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964).

■ Contrary to respondent's position, petitioner does contend that the Union has breached its duty of fair representation. (*See, e.g.*, Petitioner's Opp. at 10 and Reply at 17–18). This contention stems from the union's decision not to represent him on appeal of the arbitration decision and its apparent agreement to the stipulation regarding the limited use that the arbitrator could make of Payne's prior disciplinary history at Giant.[4] First, petitioner contends that the Union "specifically informed Petitioner that it could not take an appeal in this matter for him because it was financially unable to do so *but* that he could take the appeal on his own." (*Id.* at 9–10 (emphasis in original)). A union is not required to advance every grievance of its members. Instead, the union "possesses discretion to pursue only those grievances it fairly considers to be meritorious," and exercise of that discretion does not necessarily suggest a breach of the duty of fair representation. *Lewis v. Greyhound Lines–East*, 555 F.2d 1053, 1055 (D.C.Cir. 1977) (per curiam). Petitioner does not dispute that the Union's decision to refrain from appealing the arbitration award reflected a decision regarding the use of its resources (Petitioner's Opp. at 10), nor is

---

4. Petitioner also argues in his Reply, based on an affidavit from Rudy Brown, that the Union is guilty of race-based discrimination and has treated the disciplinary records of white employees differently than those of black employees during the grievance process. These facts were raised for the first time in petitioner's Reply, and as noted by the Circuit, petitioner's "effort in his reply brief to meet his burden ... comes too late." *United States v.*

*Wilson*, 240 F.3d 39, 45 (D.C.Cir.2001). Moreover, the Court cannot determine a breach of the duty of fair representation based on Brown's affidavit, for it is impossible to conclude from his unspecified allegations whether the disciplinary proceedings involved similarly-situated individuals who were treated by the Union (as opposed to Giant) in a disparate manner.

there any reason to believe that this decision was unreasonable or made in bad faith.

■ Petitioner also argues that "the union committed fraud and it concealed issues and dealings that it had with Giant from him and to his detriment." (*Id.* at 10). This allegation relates to the stipulation agreed to by the Union and Giant in an attempt to resolve a dispute over how petitioner's disciplinary record should be considered by the arbitrator. (*See* Petitioner's Opp. at 4–6 (by entering the stipulation, the Union "did not fairly represent Payne") and Reply at 17.) Petitioner argues that he "agreed" to let the Union take his grievance to Arbitration only on the conditions that he be notified of all occurrences in the Arbitration process and that the Union make no decisions on his behalf without his approval or consent. (Petitioner's Opp. at 3). He contends that he did not authorize the Union to enter the stipulation, and "[i]f Union 730 clandestinely signed or agreed" to the stipulation, "then that would be *direct and clear evidence* that there was fraud, corruption, collusion and a conspiracy between Giant and Union 730 to violate Mr. Payne's civil rights." (Petitioner's Opp. at 4 n. 1 (emphasis in original); *see also id.* at 4 (the 2002 grievance was the "*only* grievance Mr. Payne had consented or requested Union 730 to bring before the Arbitrator") (emphasis in original)). (*See also* Petitioner's Reply at 16–17).

Neither the facts nor the law supports this argument. First, even if there was some agreement between the petitioner and the Union regarding the arbitration process, the Union's entering into a stipulation would not necessarily indicate a breach of the duty of fair representation.

According to petitioner, it was Giant that introduced evidence of his prior disciplinary warnings "out of the blue" at an arbitration hearing, and the Union's attorney argued "vigorously" against admission of this information. (Petitioner's Opp. at 4). Accordingly, it defies logic to argue that the Union's stipulation limiting how the arbitrator could use the information to which it objected somehow amounted to bad faith. Furthermore, the Union is entitled to use its own judgment in the grievance proceeding, and the stipulation was no more than a reasonable exercise of that judgment. *See Peterson v. Kennedy,* 771 F.2d 1244, 1254 (9th Cir.1985) ("We have never held that a union has acted in an arbitrary manner where the challenged conduct involved the union's judgment as to how best to handle a grievance."). In short, petitioner has failed to present sufficient facts tending to show that the union breached its duty of fair representation.[5]

■ Moreover, petitioner argues that under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.,* he has standing as "a party to the underlying arbitration action." (Petitioner's Opp. at 10). His argument is unconvincing. First, it is not clear that the FAA applies to his claim since 9 U.S.C. § 1 excepts from the FAA's coverage "contracts of employment" of any "class of workers engaged in foreign or interstate commerce." *Id.* The Supreme Court has recognized that collective bargaining agreements fall within this exception, but that the FAA may serve as guidance in labor arbitration cases. *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 41 n. 9, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ("[t]he Arbitration Act does not apply to 'contracts of

---

5. The same may be said of the Union's decision to submit a proposed last-chance agreement to the arbitrator. (Payne Aff. ¶¶ 28–31.)

Petitioner has offered no evidence that the Union submitted the proposed agreement in bad faith.

employment of ... workers engaged in foreign or interstate commerce,' 9 U.S.C. § 1, but the federal courts have often looked to the Act for guidance in labor arbitration cases"); *see also Am. Postal Workers Union, AFL–CIO v. U.S. Postal Service*, 52 F.3d 359, 362 (D.C.Cir.1995); *Bacashihua*, 859 F.2d at 404–05.

■ But even if his claim were covered by the FAA, respondent lacks standing under that statute to appeal the arbitrator's decision. Section 10 provides that an award may be vacated "upon the application of any *party* to the arbitration." *Id.* (emphasis added). Petitioner argues that "the word 'party' is symbolic under the [FAA]," and from this, he apparently assumes that he has standing to challenge the results of the arbitration between the Union and Giant. (Petitioner's Opp. at 8). However, section 10 of the FAA "has been strictly interpreted by the courts to prohibit an employee who was not a party to the arbitration from appealing the results of the arbitration between the employee's union and employer." *Bacashihua*, 859 F.2d at 405; *Acuff v. United Papermakers & Paperworkers, AFL–CIO*, 404 F.2d 169, 171 n. 2 (5th Cir.1968) (FAA did not confer jurisdiction for employees to intervene "[s]ince the Union and the Company, not the employees, were parties to the arbitration"). Accordingly, because petitioner's allegations fail to rise to the level of breach of the duty of fair representation and because he was not a party to an arbitration covered by the FAA, he lacks standing to challenge the award under that statute.

## II. Vacating the Arbitration

■ Even assuming *arguendo* that petitioner did have standing to challenge the arbitration award, there is simply no basis for vacating that award. "Collective-bargaining agreements commonly provide grievance procedures to settle disputes be-

tween union and employer with respect to the interpretation and application of the agreement and require binding arbitration for unsettled grievances." *Misco*, 484 U.S. at 36, 108 S.Ct. 364. "The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Thus, the Court's function is limited when, as here, the parties have agreed to submit all questions of contract interpretation to the arbitrator. *Id.* "In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568, 80 S.Ct. 1363, 4 L.Ed.2d 1432 (1960). The arbitrator's contract interpretation is binding "[a]s long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice." *Misco*, 484 U.S. at 36, 108 S.Ct. 364 (internal citation and quotation marks omitted). Thus, "a labor arbitration award must be enforced if the arbitrator acts within the confines of his jurisdiction and his award draws its essence from the parties' collective bargaining agreement; this is so even when a reviewing court disagrees with the arbitrator's judgment on the merits." *Northwest Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 808 F.2d 76, 78 (D.C.Cir.1987); *see also Office And Prof'l Employees Int'l Union, Local 2 v. Washington Metro. Area Transit Auth.*, 724 F.2d 133, 140 (D.C.Cir. 1983) ("arbitrator cannot grossly deviate from his conferred authority or from the issues submitted for arbitration"). Accordingly, "an award will not be vacated even though the arbitrator may have made, in the eyes of judges, errors of fact and law unless it compels the violation of

law or conduct contrary to accepted public policy." *Am. Postal Workers Union, AFL–CIO v. U.S. Postal Serv.*, 789 F.2d 1, 7 (D.C.Cir.1986) (internal citation and quotation marks omitted). This "exception applies only when the public policy emanates from clear statutory or case law, *not from general considerations of supposed public interests*," *Northwest Airlines*, 808 F.2d at 78 (emphasis in original) (internal citation and quotation marks omitted), and it is "*extremely narrow.*" *Am. Postal Workers Union*, 789 F.2d at 8 (emphasis in original); *see also U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, AFL–CIO*, 810 F.2d 1239, 1241 (D.C.Cir.1987) (same).

▇▇▇ The instant case does not fall within this "extremely narrow" exception. *Id.* The arbitrator did not grossly deviate from the authority conferred upon him, nor did the award violate public policy. Petitioner first argues that the award should be vacated because the stipulation submitted to the arbitrator overstates the length of his 1998 suspension. (Petitioner's Opp. at 11–12).[6] Even taking petitioner's contention as true that it was overstated by some twenty-seven (not twelve) days, it does not support vacating the arbitration award. Courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts;" instead, "[t]o resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." *Misco*, 484 U.S. at 38, 108 S.Ct. 364. Nor is there any evidence that the arbitrator's decision hinged on the length of petitioner's previous suspension, but even if it did, an overstatement of the suspension's length is the type of factual error that is insufficient for purposes of overturning an arbitration decision.

▇▇▇ Petitioner next complains the arbitrator "was required to exclude the testimony about the 1998 and 2000 disciplinary notices." (Petitioner's Opp. at 11). He contends that the arbitrator should have excluded his previous discipline from consideration of the 2002 grievance because section 13 of the CBA provides that "a disciplinary action is only good for six months." (*Id.* at 10–11). Indeed, the CBA provides that a "warning shall be effective for six (6) months." (CBA at 8 (Article 13, § 13.6)). But the arbitrator did not reinstate the warning or discipline petitioner for the actions that led to those warnings; rather, the arbitrator used the evidence for the purpose of evaluating petitioner's credibility and determining an appropriate remedy. Generally, an arbitrator has authority to fashion a remedy if a breach of the CBA occurred, and reference to the employee's prior work history is highly relevant to such a determination. *Tobacco Workers Int'l Union, Local 317 v. Lorillard Corp.*, 448 F.2d 949, 956 (4th Cir.1971) ("although the agreement is silent as to remedies, the fashioning of an appropriate remedy is not an addition to the obligations imposed by the contract"); *see also Brewery & Beverage Drivers Local 67 v. Canada Dry Potomac Corp.*, 628 F.Supp. 73, 75 (D.D.C.1986) (having found a breach of contract, it is the duty of the arbitrator to fashion a remedy); *Davis v. Ameripol, Inc.*, 55 F.R.D. 284, 286 n. 3 (E.D.Tex.1972) ("No arbitrator can fail to

---

6. The parties disagree over the actual length of the suspension—petitioner claims it was three days (Am. Petition Ex. 6)., while respondent contends that it was twelve days (Respondent's Mot. at 11 n. 5 (citing *id.* App. L (Giant's Arbitration Brief) at 15))—but they agree that the actual length of the suspension was less than the "month" cited in the stipulation and in the arbitrator's award.

take note of a good record and at the same time the arbitrator must take note of a poor record.") (internal citation and quotation marks omitted). Because the arbitrator was asked to determine whether petitioner was terminated for just cause and to fashion an appropriate remedy (Respondent's Mot. App. A at 2), there is no basis to argue that the arbitrator's consideration of petitioner's disciplinary record did not draw its essence from the CBA or that it in any way violated public policy. Thus, this Court is not entitled to "disagree with [the arbitrator's] honest judgment" as to the appropriate remedy. *Misco*, 484 U.S. at 38, 108 S.Ct. 364.

Similarly, petitioner challenges the arbitrator's alleged disregard of the testimony of certain witnesses at the June 19, 2003 arbitration hearing. (Petitioner's Opp. at 12; Am. Petition at 2 n. 1). Petitioner argues that other Giant employees testified that on previous occasions unrelated to the April 18, 2002 incidents, "numerous white co-workers threatened managers all day long in the warehouse and Giant managers never disciplined these employees." (Petitioner's Opp. at 12). However, even if this testimony were somehow relevant to whether Giant managers "lied" about the events that took place on April 18, 2002 (Am. Petition at 2 n. 1), there is no support for petitioner's contention that the arbitrator "ignored" this testimony. (Petitioner's Opp. at 12). The arbitrator acknowledged that "[t]he Union contends that there have been worse incidents at the employer's [other] facilities" in which "no one was discharged." (Respondent's Mot. App. A at 11). Indeed, there is no indication that the arbitrator's decision to credit the testimony of "the parties directly involved in the incident" (Respondent's Mot. App. A at 13) grossly deviated from his authority to decide the dispute or that it contravened public policy. *See Int'l Chem. Workers Union v. Columbian Chem. Co.*, 331 F.3d 491, 497 (5th Cir.2003) (arbitrator's credibility determination and decision not to consider certain evidence did not "rise to the level of the Arbitrator applying his own industrial brand of justice").

█ Moreover, even if the FAA applies to petitioner's claims, that statute also provides for only limited judicial review of an arbitrator's award. In addition to certain statutory grounds for vacating an arbitration award under the FAA—including "corruption, fraud, or undue means," or "evident partiality or corruption in the arbitrators," 9 U.S.C. § 10(a)(1)-(4)—the arbitrator's award may be vacated only if it is in "manifest disregard for the law." *LaPrade v. Kidder, Peabody & Co., Inc.*, 246 F.3d 702, 706 (D.C.Cir.2001) (internal citation and quotation marks omitted). "Manifest disregard of the law means more than error or misunderstanding with respect to the law." *Id.* (internal citation and quotation marks omitted). A court must find that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Id.*

█ Applying this standard here, the Court finds no such manifest disregard of the law. Petitioner's complaint that "by law," the arbitrator "was required to exclude the testimony about the 1998 and 2000 disciplinary notices" does not suffice. (Petitioner's Opp. at 11). He does not define the "law" which required the arbitrator to make such an exclusion, but it appears that he relies on section 13 of the CBA which, he argues, mandates that "a disciplinary action is only good for six months." (*Id.* at 10–11; *see also* CBA at 8 (Article 13)). Even under petitioner's misguided theory that the arbitrator—by taking notice of the previous disciplinary

incidents which occurred more than six months prior to his termination—misconstrued section 13.6 of the CBA (Petitioner's Opp. at 11, 13), this would amount, at most, to an error in interpreting the contract, which is simply not a "manifest disregard of the law" under the FAA. *LaPrade*, 246 F.3d at 706; *see also Employers Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1486 (9th Cir.1991) (under the FAA, the Court had "no authority to vacate an award solely because of an alleged error in contract interpretation"). Moreover, there is no basis to argue that the alleged factual error relied upon by the arbitrator (regarding the length of the 1998 suspension) or his decision to credit only the testimony of those witnesses involved in the incident amounted to a manifest disregard of the law. *See Int'l Chem. Workers Union*, 331 F.3d at 497 (arbitrator's credibility determination and decision not to consider certain evidence did not amount to a manifest disregard for the law under the FAA).

Thus, even if one finds that petitioner has standing, there is, more importantly, no basis upon which to vacate the award, and thus, Mr. Payne's petition must be dismissed.[7]

### CONCLUSION

For the foregoing reasons, the Court finds no valid basis for attacking the award. It therefore grants Giant's motion to dismiss, denies petitioner's motion for summary judgment, and dismisses the petition with prejudice.

### *ORDER*

For the reasons stated in the accompanying Memorandum Opinion, it is hereby

ORDERED that respondent's motion to dismiss [# 9] is **GRANTED**; it is

ORDERED that petitioner's motions to vacate [# 3] and for summary judgment [# 17] are **DENIED**, and the above-captioned action is **DISMISSED WITH PREJUDICE**.

**THIS IS A FINAL APPEALABLE ORDER.**

---

7. Accordingly, the Court need not address the factually-contested issue of whether petitioner withdrew his arbitration claim and mooted the petition. (*See* Respondent's Mot. at 10).